**LODGE 743, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,**

v.

**UNITED AIRCRAFT CORPORATION, Defendant.**

**LODGE 1746, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Plaintiff,**

v.

**UNITED AIRCRAFT CORPORATION, Defendant.**

Civ. A. Nos. 9084 and 9085.

United States District Court
D. Connecticut.

Aug. 1, 1963.

Mozart G. Ratner, Washington, D. C., William S. Zeman, Hartford, Conn., Plato E. Papps, Washington, D. C., for plaintiffs.

Joseph C. Wells, Washington, D. C., Charles A. Mahan, East Hartford, Conn., Frank E. Callahan, New Haven, Conn., for defendant.

CLARIE, District Judge.

## PART I.

The plaintiffs have moved for an order pursuant to Rule 37(b) (2) of the Federal Rules of Civil Procedure. This motion if granted would be tantamount to a default judgment and an adjudication of the issues. The plaintiffs' grounds for the motion are that the defendant deliberately failed to answer plaintiffs' interrogatories as required by this Court's orders of January 9, 1963 and March 14, 1963.

The present discovery proceedings had their origin in this Court's ruling dated March 28, 1962, D.C., 30 F.R.D. 142. That order granted the defendant's motion for a more specific statement, conditioned upon the plaintiffs' not being required to answer until their own discovery proceedings were completed. Thereafter, on January 9, 1963, this Court denied the defendant's motion to suspend its reply to plaintiffs' interrogatories pending disposition of the proceedings before the National Labor Relations Board.

On March 14, 1963, this Court ruled on defendant's motion for reconsideration of its ruling of January 9, 1963. The defendant again was ordered to answer certain interrogatories of the plaintiffs. The defendant requested a reasonable time within which to furnish the plaintiffs with the answers to said interrogatories, and a ruling setting forth the meaning and intent of specified interrogatories. After defining the information to be supplied, the Court ordered that the defendant should be allowed ninety (90) days from date (March 14, 1963) to answer.

On June 10, 1963, the defendant delivered to the office of the plaintiffs' counsel approximately 120,000 photographic copies of selected individual personnel records weighing over 450 pounds, purportedly for the purpose of providing the information sought by the plaintiffs. However, plaintiffs' counsel refers to this production of records as a gigantic "do it yourself kit" and not a compliance with the Court's order. The plaintiffs further represent that the defendant's non-compliance was deliberate and calculated; and contend that under Rule 37(b) (2) the plaintiffs are entitled to a favorable adjudication against the defendant on the merits of the litigation as a matter of law.

However, the defendant claims that it did comply with the Court's order to the limit that time and physical limitations would permit. It represents that the Court had by its order assigned to it an Herculean task, which it had set out to accomplish in good faith. Furthermore, that its plant electronic equipment could not handle the project and defendant is now prepared and willing, at its own expense, to comply by hiring independent electronic equipment and personnel to complete the job.

This Court is not wholly satisfied with the defendant's explanation; it failed to request an extension of time for compliance under the rules, when it became well-known that time limitations would make it impossible to compile the analytical record which it knew was required. Instead it chose to interpret compliance as a compliance within physical limitations, of equipment, personnel and time; and that part performance must be accepted as evidence of good faith.

However, the defendant has performed the first major step, the segregating of the source material in form to be analyzed. It is not as if it had done nothing. The work already accomplished could have conceivably taken the time which has elapsed since the Court's ruling on defendant's objection to interrogatories. Furthermore, the Court's original ruling did not order or spell out in detail, the extent of the analysis required and the applicable penalties under Rule 37(b) which the Court would apply if such were not met on time.

This situation differs from the cases cited as controlling by plaintiffs' counsel. Those are cases where injunctive relief or like specific orders had been granted and complete failure to perform was evident. Such is not our present circumstance.

The inappropriateness of the use of contempt proceedings or an adjudication on the merits under such circumstances, is best expressed in the dissenting opinion of Justice Frankfurter in the case of McComb v. Jacksonville Paper Co.:

> "Ambiguity lurks in generality and may thus become an instrument of severity. Behind the vague inclusiveness of an injunction like the one before us is the hazard of retrospective interpretation as the basis of punishment through contempt proceedings." 336 U.S. 187, 197, 69 S.Ct. 497, 502, 93 L.Ed. 599 (1949).

If the plaintiffs' claim in this case were to be wholly proven and their theories of law accepted by the Court, the damages involved could amount to several million dollars. The circumstances here do not justify such severity and arbitrary action by the Court, as the plaintiffs would have it impose. The plaintiffs' motion for an order under Rule 37(b)(2) is denied as to the form and relief requested.

The Court hereby orders that the defendant, in civil actions #9084 and #9085, shall answer with specificity each and every interrogatory which the Court included in its rulings of January 9, 1963 and March 14, 1963. An analysis of the records shall be made by the defendant at its sole expense, in accordance with the electronic analytical procedures defendant's counsel represented to the Court on the record in prior hearings would be necessary to accomplish the assemblage of the data required. The defendant shall produce these answers to interrogatories within ninety (90) days from July 22, 1963. This order is made pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Failure to comply shall subject the defendant to any or all of the penalties which said rule authorizes and provides.

## PART II.

The plaintiffs move to dismiss the defendant's counter-claim filed with this Court in both cases on May 27, 1963, for the reasons that the Court lacks jurisdiction over the subject matter, and that it failed to state a claim on which relief could be granted. In the alternative, plaintiffs moved to strike the counter-claim because it is not cognizable under § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C. § 185.

The defendant's counter-claim, which is the object of the instant motion to dismiss, is an outgrowth of a strike called by the plaintiff unions in the summer of 1960, which they subsequently lost. On August 11, 1960, the parties entered a strike settlement agreement. This agreement contained a formula by which the strikers would be returned to work without discrimination provided jobs were available, i. e. the jobs had not been filled by replacement and there was work to be performed.

Some three weeks after this agreement was signed, the company announced that it would not consider rehiring certain named strikers because of their alleged picket line violence and other strike misconduct. The unions objected to what appeared to be arbitrary unilateral action by the company. Later, the parties agreed to submit the question of the

strikers'' misconduct and the effect to be given it to arbitration.

The relevant parts of the submission pact provide:

"With respect to the said employees whose names are listed on Exhibit C, the Company declines and refuses to accord them the rights and privileges with respect to reinstatement to the Company's active employment which are accorded to other striking employees under the strike settlement agreements because of the conduct of these employees during the strike.

"The Unions declare and allege that the striking employees whose names are listed on Exhibit C hereto have not engaged in conduct which warrants said employees being accorded reinstatement rights any different from, or less than, those accorded any other employees who participated in the strike until the end thereof, and contends affirmatively that the employees whose names are listed on Exhibit C attached hereto should be accorded reinstatement rights and privileges to the same extent as other striking employees whose reinstatement rights are set forth in the strike settlement agreements. * * *

"To resolve this issue as set forth in the two preceding paragraphs, finally and completely, and without recourse whatsoever to any appeal or review under any State or Federal laws by the Unions, or the Company, or by any individual employee whose name is listed on Exhibit C attached hereto, the Unions (acting for and on behalf of themselves and in their capacity as representatives of the said individual employees so listed) and the Company agree as follows:

"1. (That three judges of the State of Connecticut) * * * sit as an impartial board of arbitration to hear and decide finally and completely the aforesaid issue concerning the reinstatement rights of each of the striking employees whose names are listed on Exhibit C.

"2. This panel of judges shall decide and determine the issue with respect to each employee *in accordance with recognized principles of equity and law* by the decision of the majority of the three (3) judges who shall hear evidence on the facts concerning such issue. In this connection, the panel shall not be required to make specific findings of fact, and its decision on the issue with respect to each employee may be in whatever written form the panel shall deem to be appropriate." (Emphasis added).

Fifty names appeared on Exhibit C but by the time the arbitration panel started its hearings, the unions and the company had agreed on the disposition to be made in fourteen (14) cases. During the arbitration proceedings, the unions withdrew their contentions as to six (6) strikers and the company accepted their resignations. The panel heard evidence and rendered decision in the others. In each of these latter cases the individual concerned was found guilty of strike misconduct.

The defendant charges in its counter-claim that the unions breached their agreement to be bound by arbitration by filing charges with the National Labor Relations Board. These charges filed by the unions against the company allege that the company refused to rehire and reinstate approximately 3600 strikers "because of their membership and activities in behalf of Lodge #1746 (and Lodge #743), International Association of Machinists, AFL–CIO, a labor organization * * *". The defendant's counter-claim alleges a breach of contract on the part of the union insofar as the charges filed with the National Labor Relations Board include those employees, who had been the subject of the arbitration proceedings.

■ This Court does have jurisdiction of the subject matter of the defend-

ant's counter-claims. The arbitration contract of August 24, 1960, between the plaintiffs and the defendant was in furtherance of the strike settlement agreement of August 11, 1960. It was a labor contract designed to effect and maintain labor peace. It is clearly within the provisions of § 301(a). Retail Clerks Intern. Ass'n v. Lions Dry Goods, 369 U.S. 17, 27–28, 82 S.Ct. 541, 7 L.Ed. 2d 503 (1962).

It is conceded by the parties that they had submitted to arbitration the question of whether or not the conduct of fifty (50) employees during the strike was such that they should not be accorded reinstatement rights, and privileges to the same extent as other striking employees had under the strike settlement agreement of August 11, 1960. It is also recognized that this agreement provided for a determination of the issues finally and completely and without recourse to any appeal or review under any State or Federal laws by either party.

The defendant's counter-claim alleges that the plaintiffs breached the arbitration contract by their filing a charge with the National Labor Relations Board that defendant's failure to recall the strikers in question was because of their membership and activities in behalf of the unions rather than because of their misconduct during the strike. The plaintiffs claim that this action by the company was an unfair labor practice under Section 8(a) (1) and 8(a) (3) of the National Labor Relations Act. Furthermore, because of such charges having been made by the plaintiffs, a complaint against the defendant was issued by the General Counsel of the Board, and a hearing is presently in progress at which plaintiffs' counsel has participated and assisted the General Counsel in the prosecution of the complaint.

In its prayers for relief, the defendant seeks a judgment against the plaintiffs finding a breach of contract; a decree requiring the plaintiffs to withdraw all charges filed with the National Labor Relations Board pertaining to those strikers whose names appear in the arbitration agreement; a decree enjoining the plaintiffs from directly or collaterally attacking the decision of the arbitrators; and an award of compensatory and exemplary damages, which will include defendant's costs and attorney's fees.

■ The real question to be determined is whether or not the defendant's counter-claim states a good cause of action; for if it fails to do so, the plaintiffs' motion to dismiss is proper in accordance with Rule 41(b) of the Federal Rules of Civil Procedure. It is the opinion of this Court that the counter-claim does fail to state a good cause of action and the plaintiffs' motion to dismiss said counter-claims is granted.

■ Insofar as the arbitration agreement of August 24, 1960, attempted to preclude by contract the Union or its members from filing unfair labor practice charges against the company with the National Labor Relations Board, it is contrary to Federal law and is unenforceable.

Title 29 U.S.C.A. § 160, relating to the powers of the Board to prevent unfair labor practices, reads in part as follows:

"(a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise * * *.

"(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board * * * shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board * * *."

"The Act itself contemplates a continuing jurisdiction by the Board over employer-employee relationships, for § 160(a) includes a provision that the Board's power over

unfair labor practices 'shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.' Clearly, agreements between private parties cannot restrict the jurisdiction of the Board." N. L. R. B. v. Walt Disney Productions, 146 F.2d 44, 48 (9 Cir. 1945).

It is the Company's position that since both parties contracted that the arbitration would be a final adjudication of the issues submitted, it was tantamount to a contracting away of the right of appeal to any State or Federal authority as to each of the individuals whose names appeared therein. The company contends that since a charge was essential to the filing of a complaint by the Board, and that the right to file a charge had been abrogated by contract, the conduct of the plaintiffs in filing charges with the National Labor Relations Board was a breach of contract.

"[T]he Board's exclusive jurisdiction cannot be displaced by proceedings before a privately constituted arbitration board * * *. This is true even when the same act which is alleged to be an unfair labor practice is also alleged to be a violation of a provision of the contract. Otherwise the parties by writing into their agreement a ban upon the unfair practices enumerated in § 158, together with a provision for arbitration of all disputes involving alleged breaches of contract could deprive the Board of all jurisdiction over unfair labor practice charges during the term of the contract. This would clearly violate § 160(a)." United Electrical Radio & Machine Workers v. Worthington Corp., 136 F.Supp. 31, 33 (D.Mass.1955) rev'd on other grounds, 236 F.2d 364 (1 Cir. 1956).

The jurisdiction of the National Labor Relations Board established by Congress cannot be blocked or completely cut off by the private arbitration agreement of the parties. Often in such matters, there are circumstances and pressures exerted outside the orbit of public interest. The Board was designed to prevent any unfair economic pressure or expedient arrangements condoning unfair labor practices.

" '[T]he purpose of that act was "to establish a single paramount administrative or quasi-judicial authority in connection with the development of federal American law regarding collective bargaining"; that the only rights made enforceable by the act were those determined by the National Labor Relations Board to exist under the facts of each case; and that the federal trial courts were without jurisdiction to redress by injunction or otherwise the unfair labor practices which it defined.' We think it clear that parties may not by including a provision against unfair labor practices in a bargaining agreement vest in the courts jurisdiction to deal with matters which Congress has placed' within the exclusive jurisdiction of the National Labor Relations Board." Textile Workers Union of America v. Arista Mills Co., 193 F. 2d 529, 533 (4 Cir. 1951).

"[T]he Act confers upon the Board exclusive jurisdiction to prevent unfair labor practices within the meaning of the statute. The Board's exclusive function in this field may not be displaced by action before State agencies or by arbitration." National Labor Relations Board v. International Union, 194 F.2d 698, 702 (7 Cir. 1952).

It is argued that arbitration should be encouraged and any policy which discourages such a medium from being a prompt and final adjudication of disputed labor issues undermines the usefulness of this facility. This conclusion does not follow; for it must be recognized that the Board will give such weight and consideration to the arbitration agreement and its resulting conclusions as are consistent with public policy.

"The fear of possible conflict with the NLRB can easily be exaggerated. The arbitrator himself might reject an interpretation of the contract which would permit the company to do or force it to do what the Board would enjoin. It is also clear that the mere rendition of an arbitration award in no way precludes the Board from exercising jurisdiction over the same subject matter upon the filing of a complaint alleging an unfair labor practice. * * *

"Although not bound by the arbitrator's award, the Board will often defer to an award already rendered unless the arbitration procedure has been unfair or irregular, or the arbitrator's decision is repugnant to the purpose and policies of the labor act. * * *

"Rather than clash, the private interests advanced in the arbitral forum and the public interest advanced in the administrative forum, are far more likely to be complementary." Carey v. General Electric Company, 315 F.2d 499, 509–510 (2 Cir. 1963).

It is contrary to the basic philosophy of our National Labor Law policy to permit a union or an individual employee to contract away the jurisdiction of the National Labor Relations Board as established by Congress. It makes no difference whether or not this is attempted in a labor contract by the parties agreeing not to file a complaint or by contracting for an arbitration procedure which allows no further review under Federal law.

"It is fundamental that arbitration provisions in a bargaining agreement cannot oust the Board's jurisdiction to prevent unfair labor practices." Public Util. Etc. Local 274 v. Public Serv. Electric & Gas Co., 26 N.J. 145, 139 A.2d 1, 9 (1958). See also N. L. R. B. v. General Motors Corp., 116 F.2d 306, 312 (7 Cir. 1940).

The plaintiffs' motions to dismiss the defendant's counter-claims for failure to state a claim on which relief can be granted is hereby ordered granted and said counter-claims dismissed.