**LODGE 743, INTERNATIONAL ASSO-CIATION OF MACHINISTS, AFL-CIO, Plaintiff-Appellee,**

National Labor Relations Board, Intervenor,

v.

**UNITED AIRCRAFT CORPORATION, Defendant-Appellant.**

**LODGE 1746, INTERNATIONAL ASSO-CIATION OF MACHINISTS, AFL-CIO, Plaintiff-Appellee,**

National Labor Relations Board, Intervenor,

v.

**UNITED AIRCRAFT CORPORATION, Defendant-Appellant.**

**No. 384, Docket 28595.**

United States Court of Appeals Second Circuit.

Argued May 26, 1964.

Decided Oct. 1, 1964.

**6**

Mozart G. Ratner, Plato E. Papps, Washington, D. C., William S. Zeman, Hartford, Conn., for appellees.

Joseph C. Wells, Winthrop A. Johns, Washington, D. C. (Reilly & Wells, Washington, D. C., of counsel), for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Solomon I. Hirsh, Glen M. Bendixsen, Attys., N. L. R. B., for intervenor.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Appellees (hereinafter the Union) brought suit in the United States District Court for the District of Connecticut under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185 (a), alleging that appellants (hereinafter the Company) had violated a strike settlement agreement dated August 11, 1960. The Company counterclaimed, also under § 301(a), alleging a violation by the Union of a subsequent arbitration submission agreement dated August 24, 1960, and requesting declaratory relief, injunctive decrees, and damages. The Union, joined by the National Labor Relations Board as an intervenor, moved to dismiss the counterclaim on several grounds, including failure to state a claim upon which relief could be given, and on August 1, 1963 the motion was granted. The opinion below is reported at 220 F.Supp. 19. The Company appeals to this court under 28 U.S. C. § 1292(a) (1), which, insofar as it is relevant, authorizes appeals from interlocutory orders denying injunctive relief.[1]

The claims and counterclaims in this suit arose out of a strike called by the Union at four Company plants in June, 1960. The strike ended in failure two months later with the conclusion of a settlement agreement which provided, in part, for the recall to work of the strikers according to a complex formula. The Company, however, refused to apply the agreement to fifty employees whom it accused of misconduct during the strike. The Union, in response, contended that these employees had not engaged in conduct which merited them less favorable treatment than the other strikers received. Unable to reach an understanding, the parties executed an arbitration submission agreement which provided in part:

"To resolve this issue * * * finally and completely, and without recourse whatsoever to any appeal or

---

1. This appeal therefore concerns only the denial of injunctive relief, and not the dismissal of the Company's request for a declaratory judgment and damages.

review under any State or federal laws by the Unions, or by the Company, or by any individual employee whose name is listed on Exhibit C attached hereto, the Unions (acting for and on behalf of themselves and in their capacity as representatives of the said individual employees so listed) and the Company agree as follows:

"1. The Honorable Raymond E. Baldwin, Chief Justice of the Supreme Court of Errors for the State of Connecticut, may appoint, and is hereby requested to appoint, a panel of three retired judges of the said Court (including a fourth judge to act as an alternate in this matter) to sit as an impartial board of arbitration to hear and decide finally and completely the aforesaid issue concerning the reinstatement rights of each of the striking employees whose names are listed on Exhibit C.

\* \* \* \* \* \*

"4. The panel shall have no jurisdiction or authority to award back pay to any employee involved in this matter, or to assess against any of the parties any monetary award or penalty, but shall have full, complete and final jurisdiction and authority to determine and decide whether any individual whose name is listed on Exhibit C attached hereto should, under all of the circumstances, be accorded all, or any part, or none of the rights and privileges accorded other striking employees under the strike settlement agreements \* \* \*."

By the time of the arbitration hearing fourteen names had been dropped from the list, and during the hearing the Union withdrew its claims in behalf of six others. As for the remaining thirty employees, the arbitrators found them guilty of strike misconduct and deprived them of some or all of their rights under the strike settlement agreement.

Undaunted, beginning in December 1960, the Union filed unfair labor practice charges with the National Labor Relations Board under § 8(a) (3) and § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (3), 158 (a) (1), alleging that the Company was discriminating against approximately 3500 employees, including the thirty-six whose names remained on the list at the start of the arbitration hearing, by denying them reinstatement rights because of their participation in the strike. In February, 1963, the General Counsel of the Board issued a complaint based on the Union's charges, and in May, 1963, a hearing began before a trial examiner.

Meanwhile, the Union had also brought suit under § 301(a) in December, 1961, claiming a violation by the Company of the strike settlement agreement. In response, the Company, in May, 1963, filed the counterclaim at issue in this appeal, alleging that the Union had violated the arbitration submission agreement by charging the Company with an unfair labor practice as to the thirty-six employees. The Company relied on the provision of the arbitration agreement which sanctioned a final determination of the rights of the thirty-six employees, "without recourse whatsoever to any appeal or review under any State or federal laws." As injunctive relief, the Company requested a decree requiring the Union to withdraw its unfair labor practice charges regarding the thirty-six employees, and another decree forbidding the Union from attacking the arbitration award in any other way.

In dismissing the counterclaim for failure to state a claim upon which relief could be granted, the court below held:

"Insofar as the arbitration agreement of August 24, 1960, attempted to preclude by contract the Union or its members from filing unfair labor practice charges against the company with the National Labor Relations Board, it is contrary to

Federal law and is unenforceable." 220 F.Supp. 19, 23.[2]

For the reasons now to be stated, we agree.

At the outset we are faced with a question concerning interpretation of the arbitration agreement. The Union argues that it was not the intent of the parties to bar the filing of unfair labor practice charges before the Board, or at least the filing of charges such as are involved in this case. Alternatively, even if the provision of the agreement can be construed as a waiver of the right to file unfair labor practice charges, the Union contends it was not sufficiently clear and unmistakable to be given legal effect. These arguments, however, raise in part questions of fact as to the circumstances of the agreement that cannot be dealt with on a motion to dismiss.[3] For the purposes of this appeal we must accept the allegation of the Company that the arbitration agreement effectively barred the filing of unfair labor practice charges in connection with the refusal of the Company to grant the thirty-six employees full reinstatement rights.

Turning now to the nub of the case, we must decide whether § 301(a) authorized the lower court to grant enforcement of the arbitration agreement as interpreted above. In performing this task, the Supreme Court has instructed us to consult "the policy of our national labor laws," including "express statutory mandates." Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456–457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). We conclude that the policy and the express mandates of the National Labor Relations Act are opposed to the enforcement of that part of the arbitration agreement which bars the Union from maintaining unfair labor practice charges before the Board.

The standard rule in cases such as this, enunciated in numerous decisions of the Supreme Court, this court, and the courts of other circuits, is that the right to resort to the Board for relief against unfair labor practices cannot be foreclosed by private contract. For example, see J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 336–339, 64 S.Ct. 576, 88 L.Ed. 762 (1944); National Licorice Co. v. N. L. R. B., 309 U.S. 350, 359–361, 60 S.Ct. 569, 84 L.Ed. 799 (1940); N. L. R. B. v. Radio Officers' Union, 196 F.2d 960, 965 (2 Cir. 1952), aff'd, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954); N. L. R. B. v. E. A. Laboratories, Inc., 188 F.2d 885, 887 (2 Cir. 1951), cert. denied, 342 U.S. 871, 72 S.Ct. 110, 96 L.Ed. 655 (1951); International Union of Elec. Workers v. N. L. R. B., 328 F.2d 723, 727 (3 Cir. 1964); N. L. R. B. v. Threads, Inc., 308 F.2d 1, 8 (4 Cir. 1962). Nor is an arbitration award of any greater effect in this respect. N. L. R. B. v. Bell Aircraft Corp., 206 F.2d 235, 237 (2 Cir. 1953); N. L. R. B. v. Hershey Chocolate Corp., 297 F.2d 286, 293 (3 Cir. 1961); N. L. R. B. v. International Union, UAW, 194 F.2d 698, 702 (7 Cir. 1952).

These decisions are based on the express language of § 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a), which provides in part:

"The Board is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: * * *."

This express statutory mandate, in turn, reflects the theory enunciated by the Supreme Court in National Licorice Co. v. N. L. R. B.: "The Board asserts a public right vested in it as a public body, charged in the public inter-

**2.** The lower court's decision thus related only to inhibitions on the filing and pursuit of unfair labor practice charges, and not to other kinds of legal recourse by the Union.

**3.** According to the record on appeal, there was no trial of the Company's counterclaim, but only oral argument and the filing of briefs.

est with the duty of preventing unfair labor practices." 309 U.S. at 364, 60 S. Ct. at 577. This public interest in preventing unfair labor practices cannot be entirely foreclosed by a purely private arrangement, no matter how attractive the arrangement may appear to be to the individual participants. Moreover, as the court below pointed out, "The Board was designed to prevent any unfair economic pressure or expedient arrangements condoning unfair labor practices." 220 F.Supp. at 24. The aim of the act to give special protection to the economically vulnerable would be defeated if contracts entered into because of that very vulnerability were enough to preclude enforcement of the act.

The Company acknowledges that such has been the law, but it contends that recent judicial trends require reconsideration of these propositions. First, it points to a number of cases which apparently hold that rights under the National Labor Relations Act can be waived by private contract. One line of these cases cited by the Company endorses the waiver by unions through collective bargaining agreements of their right to obtain information for use in collective bargaining under § 8(a) (5), 29 U.S.C. § 158(a) (5); N. L. R. B. v. Perkins Machine Co., 326 F.2d 488 (1 Cir. 1964); Timken Roller Bearing Co. v. N. L. R. B., 325 F.2d 746, 751 (6 Cir. 1963), cert. denied, 376 U.S. 971, 84 S.Ct. 1135, 12 L.Ed.2d 85 (1964). There are cases in this court to the same effect. N. L. R. B. v. New Britain Machine Co., 210 F.2d 61 (2 Cir. 1954); N. L. R. B. v. Otis Elevator Co., 208 F.2d 176, 179 (2 Cir. 1953).

Another line of cases sanctions the waiver by unions through no-raiding agreements with other unions of their right under § 9(c) of the Act, 29 U.S.C. § 159(c), to petition the Board for certification as a collective bargaining agent: United Textile Workers v. Textile Workers Union, 258 F.2d 743 (7 Cir. 1958); Local 2608, Lumber & Sawmill Workers v. Millmen's Local 1495, 169 F. Supp. 765 (N.D.Cal.1958); contra, International Union of Doll & Toy Workers v. Metal Polishers, etc. Union, 180 F. Supp. 280 (S.D.Cal.1960). Still another case cited by the Company is Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed. 2d 503 (1962), in which the Supreme Court held that a strike settlement agreement, which among other things obligated the parties to withdraw all unfair labor practice charges before the Board and to refrain from filing any new ones on account of the strike, was cognizable under § 301(a).

Taking these instances of waiver in reverse order, we agree with the Union and the NLRB that the Lion Dry Goods decision was concerned only with the general question of whether a strike settlement agreement, including one executed by a union not entitled to be an exclusive bargaining agent, was a "contract" enforceable under § 301(a), 369 U.S. at 18, 82 S.Ct. 541. It did not pass on the enforceability of specific provisions of the agreement. Likewise, the citation in the Lion Dry Goods decision to United Textile Workers v. Textile Workers Union, supra, alleged by the Company to constitute an endorsement of the full holding in that case, merely signified approval of the proposition that § 301(a) provides a federal forum "for actions on other labor contracts besides collective bargaining contracts." 369 U. S. at 26, 82 S.Ct. at 547.

As for the United Textile Workers decision itself, it too seems to have focused almost exclusively on the general question of whether contracts between unions which are not collective bargaining agreements are "contracts" enforceable under § 301(a). 258 F.2d at 748–749. It did not squarely face the problem of possible conflict with the policies of the National Labor Relations Act. When in a later case this problem was forcefully presented to the same Court of Appeals, it intimated that it might not apply the rule laid down in the United Textile Workers decision in every suit under § 301(a) requesting enforcement of a no-raiding agreement. N. L. R. B. v. Wey-

erhaeuser Co., 276 F.2d 865, 875–876 (7 Cir. 1960), cert. denied, 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960).

Even more important for our purposes, the United Textile Workers decision concerned restraints on representation proceedings rather than on unfair labor practice cases. Whereas the latter, as shown above, enjoy express statutory protection from infringement by private agreements, the former do not. Thus, that decision is clearly distinguishable.

Similarly, the cases cited above that deal with the waiver by unions of their right to obtain information for use in collective bargaining are not controlling. It is noteworthy that none of these cases found such a waiver.[4] Thus their acknowledgment of the validity of this kind of waiver is not entirely conclusive. Nor has the Board, to our knowledge, taken the position that such a waiver is inherently invalid, as it does in the present case with respect to a waiver of the right to charge an employer with anti-union discrimination. The Board's attitude on this point has presumably influenced the decisions to some extent.

Apart from the weakness of the authorities, there is reason to distinguish these two types of waivers. The obligation of an employer to disclose certain information to his employees' representative is only an extrapolation from the generalized prohibition contained in § 8 (a) (5) against refusal "to bargain collectively." By contrast, the right of employees to be free from anti-union discrimination by their employer is expressly proclaimed in § 8(a) (3). Having the explicit sanction of Congress behind it, the latter may well be entitled to greater respect than the former when a court is called upon to invalidate a private agreement in the name of so vague a legal principle as "the public interest."

Second, the Company relies on a spate of recent Supreme Court decisions ex-alting the role of private agreements and private machinery in procuring industrial peace. One line of such cases ordains an extreme laissez-faire policy on the part of the courts in reviewing arbitration awards, lest they discourage resort to private methods of settling labor disputes. The most famous of these are the so-called Steelworkers Trilogy: United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The mood of these decisions was reaffirmed again by the Supreme Court in its most recent term. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

The other line of cases cited by the Company holds that enforcement of private agreements under § 301(a) is not barred simply because the suit is also within the jurisdiction of the Board. Local 174, Teamsters, etc. Union v. Lucas Flour Co., 369 U.S. 95, 101 n. 9, 82 S.Ct. 571, 7 L.Ed. 2d 593 (1962); Smith v. Evening News Ass'n, 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964).

These very cases, however, also explicitly affirm that the jurisdiction of the Board is not ousted because the suit arises under § 301(a). As the Union and the Board point out, the fact that Board jurisdiction is non-exclusive does not mean that it has been altogether preempted by private contract enforcement. As for the cases which, in general, warn courts to abstain from meddling with arbitration awards, they are inapplicable to the Board which, unlike the courts, is

---

4. The Company also cites Sinclair Refining Co. v. N. L. R. B., 306 F.2d 569 (5 Cir. 1962). The case is not in point. It concerned a dispute over the relevance of the information sought by the Union, and not a waiver of the Union's right to admittedly relevant information.

charged with vindicating a body of public rights set forth in the National Labor Relations Act. It is concern for these rights which precludes enforcement here of the arbitration agreement between the Union and the Company.

██ The final contention of the Company is that a waiver of the right to file unfair labor practice charges, contained in an arbitration agreement, should at least be enforced in those cases in which it is the declared policy of the Board to defer to prior arbitration awards. According to a recent restatement of this policy, the Board will so defer "unless it clearly appears that the arbitration proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act." International Harvester Co., 138 N.L.R.B. 923, 927 (1962), aff'd sub nom. Ramsey v. N. L. R. B., 327 F.2d 784 (7 Cir. 1964). The Company claims that the General Counsel of the Board has not proved, nor has he even alleged, that there was any such flaw in the award of the arbitrators in this case.

The most obvious answer to this objection is that the policy described above was adopted by the Board in the exercise of its own discretion to dispose of cases already before it. The courts ought not to transmute this Board policy into a rule of law and thereby prevent unfair labor practice charges from ever reaching the Board. However, the Company's contention does point up one fact relevant to the present proceedings before the Board. In the ordinary case, as the Supreme Court has noted approvingly, "the weight of the arbitration award is likely to be considerable, if the Board is later required to rule on phases of the same dispute." Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 271, 84 S.Ct. 401, 409 (1964). The arbitration award in this case, having been rendered by three former Chief Justices of the Supreme Court of Errors of the State of Connecti-

cut, carries unusual weight. Presumably the Board will take this fact into consideration, if it has not already done so, in deciding whether to apply its policy of self-restraint.

The order of the lower court dismissing the Company's counterclaim for injunctive relief, insofar as such relief would bar the Union from maintaining unfair labor practice charges before the Board, is affirmed.[5]

HAYS, Circuit Judge (concurring in the result):

Rather than suggesting that the arbitration award carries "unusual" weight, I would remind the Board that we expect it to discharge its public duty under the statute without regard to the award.

I concur in the result.

---

5. The result has been reached without reference to those portions of the record on appeal which the Company moved to strike. Therefore the motion need not be and has not been determined.